IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>300 UNITS OF RENTABLE HOUSING, located on approximately 57.81 acres of Eielson Air Force Base, fairbanks, Alaska, and POLAR STAR ALASKA HOUSING CORPORATION,<br><br>      Defendants. | Case No. 4:06-cv-0023-RRB<br><br>**ORDER REGARDING**<br>**PENDING MOTIONS** |

**I.    INTRODUCTION**

Before the Court are the United States ("Government") and Polar Star Alaska Housing Corporation ("Polar Star"), respectively Plaintiff and Defendant in this eminent domain proceeding. The property at issue consists of 300 units of military family housing located on Eielson Air Force Base near Fairbanks, Alaska.

The following motions are pending before the Court:

(1) Polar Star's Motion in Limine to Establish January 6, 2007, as Expiration Date of Ground Lease at Docket 43, and the Government's Cross-Motion to Establish January 6, 2008, as Expiration Date of the Land Lease at Docket 47;

(2) The Government's Motion Opposing Appointment of a Land Commission for the Determination of Just Compensation at Docket 49);

(3) The Government's Motion for Preliminary Determination to Establish the Validity of the Housing Lease's Renewal at Docket 55, and Polar Star's Motion in Limine to Bar Evidence of Project Lease Extension at Docket 57; and

(4) Polar Star's Motion for Partial Judgment on the Pleadings at Docket 58.

## II. BACKGROUND

In April 1984, the United States Air Force issued a "Request for Proposal" to privately develop 300 units of military family housing for lease back to the Government.[1] Under the Request for Proposal, the winning bidder would enter into an "Agreement to Lease"[2] and a 23-year "Ground Lease"[3] of 57.81 acres of land from the Government to the developer for nominal rent of

---

[1]  Docket 43, Ex. A.

[2]  See id., Ex. B.

[3]  See id., Ex. D.

$1.[4]  The first three years of the Ground Lease would allow for construction of the units, sidewalks, and roads ("Improvements").[5] Upon completion of the construction, the Developer would execute a 20-year lease of the units to the Government ("Project Lease").[6]

The Ground Lease and the Project Lease would expire on the same date, twenty-three years after the execution of the Ground Lease.[7]  Upon termination of the Ground Lease, the Government had the option of either releasing or purchasing the Improvements.  If the Government choose neither option, the developer would be responsible to remove and relocate the Improvements.  If, however, the developer left the Improvements in place after termination of the Ground Lease, the Government could declare them to be property of the Government without payment of additional compensation.[8]

The Request for Proposal included drafts of the Agreement to Lease, the Ground Lease, and the Project Lease which were prepared by the Government and which contained blanks for the commencement and expiration dates.  The exact beginning and ending

---

[4] See id., Exs. E, D.

[5] See id., Ex. C at 2, ¶ 5.

[6] See id., Ex. A.

[7] Docket 47 at 5-6, & Ex. G.

[8] See Docket 43, Ex. D, ¶ 20.

dates of the 23-year term would not be added until the bid was awarded and the contracts were executed.

Ben Lomond, Inc. ("Lomond") was the successful bidder. On January 7, 1985, Lomond and the Government signed the Agreement to Lease,[9] and the Ground Lease.[10] Although the form provided for the Ground Lease contained multiple references to a term of 23 years, the parties filled in the blanks on the form to state that the Ground Lease extended for a period "beginning 7 January, 1985, and ending 6 January, 2007."[11]

At some point after signing the Agreement to Lease and the Ground Lease, Lomond determined that construction could be completed in two years or less, rather than the three years allowed during the first three years of the Ground Lease.[12] In November 1985, the parties amended the Agreement to Lease and the Ground Lease to reduce the allowable construction period to 21 months and to authorize phased occupancy of units upon completion.[13] On November 22, 1985, the Government and Lomond executed an Interim

---

[9] Id., Ex. B.

[10] Id., Ex. D.

[11] Id. at 1.

[12] Id., Ex. C at 2, ¶ 5.

[13] Id. at 4, & Ex. E; Docket 47 at 6, & Ex. H.

Occupancy Lease to enable the Government to lease the housing units as the units were completed.[14]

Construction was certified as complete on July 21, 1986, eighteen months after execution of the Agreement to Lease and Ground Lease.[15] On August 6, 1986, Lomond and the Government executed the Project Lease, formally leasing all 300 housing units to the Government "for a period of twenty (20) years commencing on 6 August, 1986 and terminating on 5 August, 2006,"[16] after which the Government had the right to renew for subsequent annual periods.[17]

Lomond owned and operated the 300 housing units through 1994, when it failed to pay taxes owed to the Fairbanks North Star Borough. Lomond contested the Fairbanks North Star Borough's tax assessment at Board of Equalization hearings and in Alaska state court.[18] The resulting litigation lasted several years and reached the Alaska Supreme Court twice.[19] Although the litigation dealt mostly with other provisions of the Leases, when the various courts

---

[14] Docket 47 at 6, & Ex. J.

[15] Docket 43, Ex. F.

[16] Id., Ex. G.

[17] Docket 47 at 6-7, & Ex. B.

[18] See id., Exs. L, N, O, P & Q.

[19] See Lomond v. Fairbanks N. Star Borough Bd. of Equalization, 760 P.2d 508 (Alaska 1988) ("Lomond I"); Lomond v. Fairbanks N. Star Borough Bd. of Equalization, 860 P.2d 1248, 1252 (Alaska 1993) ("Lomond II").

were required to determine the duration of the Ground Lease, the courts concluded its term was 23 years, even after acknowledging the inconsistent dates.[20]

Lomond's failure to pay taxes also triggered a foreclosure provision in its financing obligations to Aetna Life Insurance Co. ("Aetna"). Aetna in turn foreclosed on Lomond's interest in the Project. In 1995, Aetna sold its interest in the project to Polar Star. Following the foreclosure sale, Polar Star became assignee of Lomond's original interest in the Agreement to Lease and the Ground Lease, as well as owner of the 300 housing units and the lessor pursuant to the Project Lease.

In 2004, Polar Star and the Government began to discuss what would happen to the housing units upon termination of the Project Lease and Ground Lease. The Government requested Congressional authorization and an appropriation of $18 million for the acquisition. In January 2006, Congress gave authorization to acquire Polar Star's entire interest at the expiration of the Project Lease and appropriated $17.9 million for that purpose. Congress required that the purchase be at fair market value and that a notice and economic analysis be sent to Congress if the Air Force decided to move forward with the acquisition.

---

[20] Docket 47, Ex. L at 5, 11 n.1 ("The lease term is throughout the agreement stated to be 23 years. However, the dates recited, January 7, 1985 to January 6, 2007, cover only 22 years.").

ORDER RE PENDING MOTIONS - 6
4:06-CV-0023-RRB

In March 2006, the parties focused their discussions on the Government's acquisition of the housing units pursuant to the Agreement to Lease, the Project Lease, and the Congressional authorization. Both parties commissioned appraisals. Throughout the negotiation process, however, the Government informed Polar Star not to assume that the Government would purchase the units, and asked what plans Polar Star had made to remove the units.[21] Despite months of dialogue, the parties were ultimately unable to agree on a purchase price. Polar Star asserted that the appraised purchase value of the units was $26,000,000. The Government, on the other hand, believed that the fair market value was $4,500,000.

On May 18, 2006, the Government informed Polar Star by letter that it intended to renew the Project Lease for a one-year term, effective August 5, 2006, through August 5, 2007, pursuant to the option in Article V of the Project Lease.[22] Article V required the parties to renegotiate the rent for the renewal term.[23] The parties failed, however, to reach an agreement on the amount of rent for the renewal term, as required by Article V. Despite its belief that it effectively renewed the Project Lease for a full year, the Government vacated the units by December 28, 2006, in order to allow Polar Star extra time to remove the units. Between

---

[21] See Docket 47 at 10, & Ex. T.

[22] See Docket 56, Ex. C.

[23] Id., Ex. A.

October 2006 and January 2007, the Government advised Polar Star in writing that it could begin removal of the units immediately.[24]

Because the parties were unable to reach an agreement on the amount of rent for an extended term of the Project Lease, the Government decided to "condemn a continuation of the Project Lease to coincide with the remaining term of the [Ground] Lease," leaving it to this Court to determine appropriate compensation.[25] On July 28, 2006, the Government filed the present eminent domain action to take the 300 housing units for a period of five months, from August 6, 2006 through January 6, 2007.[26] Both the Complaint and the Declaration of Taking filed in this suit described the taking as "a leasehold of 300 units of rentable housing, sidewalks, roads, and other appurtenances, commencing on August 6, 2006, and ending on January 6, 2007," pursuant to the Project Lease.[27]

According to the Government, the purpose of this condemnation action is "to provide the Air Force with a means of clearing title to the first five months of the one-year extension of the [Project] Lease; obtain legal rulings as to the amount of rent owned under the extension; and if necessary, provide the Air

---

[24] Docket 47, Exs. Y, Z, & AA.

[25] Docket 43 at 7, & Ex. I.

[26] Docket 1-1.

[27] Id.; Docket 4-1; Docket 43 at 7.

Force a period of time in which it could relocate military families housed in the [housing units]."[28]

**III. DISCUSSION**

    **A.    The Ground Lease Terminates on January 6, 2008**

The Ground Lease contains inconsistent duration terms on its face: "for a term of twenty-three (23) years, beginning 7 January, 1985, and ending 6 January, 2007 . . . ."[29] While calling for 23 years, the specified date range is only for 22 years. How the error (only recently discovered by the parties) should be interpreted is a matter of dispute.[30]

Polar Star argues that the parties deliberately set 6 January, 2007, as the termination date, effectively shortening the Ground Lease to 22 years, and that this shorter duration reflects the construction which Lomond completed in less than the allotted three-year construction period.[31] For support, Polar Star points to principles of contract interpretation. For example, Polar Star argues, specific ("6 January, 2007"), rather than general terms ("23 years"), and typewritten ("6 January, 2007"), rather than pre-printed ("23 years") terms should control, and that the contract

---

    [28]    Docket 47 at 11.

    [29]    Docket 43, Ex. D at 1.

    [30]    See Dockets 43, 47, 52, & 64.

    [31]    Docket 43 at 8.

should be construed against the drafting party (i.e., the Government).[32]

Polar Star also points to the course of dealing between the parties. In correspondence between the parties, the Government has referred to January 6, 2007, as the termination date. An environmental baseline survey commissioned by the Government referenced January 6, 2007, as the termination date of the Ground Lease. It appears that the Government has never, prior to this lawsuit, stated that the Ground Lease would terminate in 2008. Individuals involved in drafting and signing the Ground Lease believed that it would terminate on January 6, 2007.[33]

The Government argues that the parties intended the Ground Lease to run for 23 years, and that a plain reading of the documents shows that "6 January, 2007" is a scrivener's error which should be reformed to read: "6 January, 2008."[34] The Government also argues that although the parties did not recognize the discrepancy until this lawsuit, the parties have repeatedly represented to the courts (in prior litigation), the taxing authorities, and potential financiers, that the term was for 23 years.[35]

---

[32] Id. at 11-13.

[33] Id. at 13-18.

[34] Docket 47 at 13-14, 20-22.

[35] Id. at 22-23.

ORDER RE PENDING MOTIONS - 10
4:06-CV-0023-RRB

Case 4:06-cv-00023-RRB   Document 81   Filed 12/18/07   Page 10 of 18

The Court concludes that the Ground Lease terminates on <u>January 6, 2008</u>, a full 23 years from its execution. The 23-year term appears throughout the Ground Lease and is referenced in subsequent modifications. In contrast, the date of January 6, 2007, only appears once in the Ground Lease,[36] and nowhere in any of the modifications.

Further, the Request for Proposal called for a 23-year lease, with blanks to be filled in by the parties for the start and end dates of the 23-year period. Although Polar Star argues that the discovery that Lomond could complete the construction in shortened time reduced the lease to 22 years,[37] this argument is not supported by the Lease itself which continued to contain multiple references to the 23-year period, even in subsequent modifications. If insertion of the expiration date of "6 January, 2007" really evidenced the parties' intent to shorten the construction term to two years, then the parties should/would have crossed out the inconsistent 23-year term. That they did not is strong evidence that the parties intended a 23-year lease and that the "6 January, 2007" term was an error.

Finally, without deciding whether collateral estoppel applies, the Court also notes that when reviewing the Ground Lease in relation to other issues, the Alaska Supreme Court twice reached

---

[36] Docket 43, Ex. D at 1.

[37] <u>Id.</u> at 18.

the same conclusion that the Ground Lease had a 23-year lease term,[38] both times after the Superior Court explicitly acknowledged the conflicting dates.[39]

The Court therefore **GRANTS** the Government's Motion to Establish January 6, 2008, as the Expiration Date of the Ground Lease at Docket 52, **DENIES** Polar Star's Motion in Limine to Establish January 6, 2007, as the Expiration Date of the Ground Lease at Docket 43, and reforms the Ground Lease to reflect January 6, 2008, as the correct expiration date.

### B. Judicial Discretion to Appointment a Land Commission

In its Answer, Polar Star requests a trial on the amount of just compensation by a Land Commission appointed by the Court.[40] The parties dispute whether just compensation should be determined by the Court or by a Land Commission.[41]

Rule 71.1(h) of the Federal Rules of Civil Procedure states that in an eminent domain action: ". . . the court tries all issues, including compensation, except when compensation must be determined: (A) by any tribunal specially constituted by a federal statute to determine compensation, or (B) if there is no such

---

[38] See Lomond I, 760 P.2d at 509 n.1; Lomond II, 860 P.2d at 1252.

[39] See Docket 47, Ex. L at 5 n.1.

[40] Docket 17 at 8, ¶ 28.

[41] See Dockets 49, 62, 75.

tribunal, by a jury when a party demands one within the time to answer or within any additional time the court sets, unless the court appoints a commission."[42] The Rule further explains that "[i]f a party has demanded a jury, the court may instead appoint a three-person commission to determine compensation because of the character, location, or quantity of the property to be condemned or for other just reasons."[43]

Polar Star argues that the Court should exercise its discretion to appoint a Land Commission because the just compensation determination will require inspection and valuation of 300 units in over 100 buildings, plus physical improvements including roads, sidewalks, interiors, exteriors, and maintenance buildings.[44] In addition to the numerous buildings and improvements, Polar Star argues that fractional interests, severed damages, the cost of removal, and complicated comparisons between Polar Star's property and other properties make the determination of just compensation so complex as to warrant referral to a highly-

---

[42] Effective December 1, 2007, the former Rule 71A was re-designated Rule 71.1(h). The Advisory Committee Notes explain that the purpose of this change was "to make [the rule] more easily understood" and that "[t]hese changes are intended to be stylistic only."

[43] Rule 71.1(h)(2)(A). Cf. Fed. R. Civ. P. Rule 71A(h) (pre-Dec. 1, 2007, rule) (verbatim, except for final clause: ". . . or for other reasons in the interest of justice.").

[44] Docket 62 at 6-7.

ORDER RE PENDING MOTIONS - 13
4:06-CV-0023-RRB

Case 4:06-cv-00023-RRB   Document 81   Filed 12/18/07   Page 13 of 18

skilled Land Commission.[45] Polar Star reasons that "[i]t makes no sense to take this Court away from its other duties to devote the days required to inspect each of the 300 units of military housing and ancillary improvements being taken in this case."[46]

The Government argues that this is not the type of case typically referred to a Land Commission and that no exceptional circumstances warranting the appointment of a land commission are present.[47] According to the Government, "[a] land commission is not justified when a government land acquisition project involves only one case in which there is only one owner, a relatively small parcel, the property is not subject to varied uses, and the property is located within a reasonable distance from the federal courthouse."[48] "Therefore, the Court is the proper adjudicator of all issues, including just compensation."[49]

The Government also argues that Rule 71.1(h) allows appointment of a Land Commission only where one or both parties have demanded a jury trial and that since both parties have waived the right to a jury trial, appointment of a Land Commission is

---

[45] Id. at 8-10.

[46] Id. at 7.

[47] Docket 50 at 6-8.

[48] Id. at 7.

[49] Id. at 13.

inappropriate.[50]  This, however, only addresses what happens "if a party has demanded a jury," and says nothing about whether the Court has discretion to appoint a Land Commission where neither party has made a jury demand.

Ultimately, the decision whether to appoint a Land Commission is a matter of judicial discretion.  Under the facts hereof, the Court concludes that, utilizing the respective parties' experts, it can most expeditiously address the valuation issues without a Land Commission.  Therefore, the Government's Motion at Docket 49 Opposing Appointment of a Land Commission is **GRANTED.**

### C. The Project Lease Was Renewed By The Government

On August 6, 1986, the Government executed the Project Lease with Lomond, Polar Star's predecessor-in-interest, for a term of twenty years commencing on August 6, 1986, and ending on August 5, 2006.  Article V of the Project Lease gave the Government a renewal option and a right of first refusal to purchase the units upon expiration of the Project Lease.  The parties dispute whether the Government effectively renewed the Project Lease.[51]

Article V reads in pertinent part:

> Upon expiration of the twenty (20) year lease term, this Lease may be renewed for subsequent annual periods at the Lessee's option.  The rent for such subsequent periods must be

---

[50] Id. at 4.

[51] See Dockets 55, 56, 57, 73, 75, 77, & 79.

>     renegotiated based upon the remaining equity
>     investment . . . .  The statement of intent of
>     the Lessee to renew the Lease must be mailed
>     to the Lessor no later than sixty (60) days
>     prior to the expiration date of the lease
>     term.[52]

There is no dispute that the Government timely mailed its statement of intent to renew on May 18, 2006, more than 60 days prior to the expiration of the lease term.[53] This requirement, which depended only on the Government's actions, was met. The Government argues that it properly exercised the option, therefore, because the only undetermined term was the amount of rent for the renewal period and that where the renewal rent is left for future determination by arbitration or appraisal, the renewal right is enforceable.[54]

Polar Star argues, however, that the Government's statement of intent to renew was not valid because the parties did not successfully renegotiate rent.[55] According to Polar Star, the option to extend the Project Lease was not effective because the price term was not definite and the methodology provided to determine the price was not followed.[56]

---

[52]  Docket 56, Ex. A, Art. V.

[53]  See Docket 56 at 5-6 & Exs. C, F; Docket 71 at 5.

[54]  Docket 56 at 8-12.

[55]  See Dockets 71 & 73.

[56]  Docket 57 at 8-12.

ORDER RE PENDING MOTIONS - 16
4:06-CV-0023-RRB

The provision that "rent for such subsequent periods must be renegotiated based upon the remaining equity investment"[57] does not preclude renewal under the circumstances, for the parties have proven to be completely unable to negotiate or agree on any of these matters. To require the Government to obtain agreement on this significantly disputed item before it could renew the lease would be unreasonable.

The Government's Motion for Preliminary Determination to Establish the Validity of the Housing Lease's Renewal Motion at Docket 55 is therefore **GRANTED** and Polar Star's Motion in Limine to Bar Evidence of Project Lease Extension at Docket 57 is **DENIED**.

### D. Polar Star's Motion For Judgment On The Pleadings

The parties dispute whether the Government's condemnation of an extension of the Project Lease includes Polar Star's Project Lease obligations, such as maintenance and providing insurance.[58]

Because the Court finds that the Government's exercise of the renewal option was effective, the Project Lease was extended for an annual term beginning on August 5, 2006, and extending through August 5, 2007. The renewal period encompasses and extends beyond the five-month leasehold interest regarding which the Government sought to quiet title, or alternatively, condemn. Polar

---

[57] Docket 56, Ex. A at 5.

[58] See Dockets 58, 71, & 76.

Star's Motion for Partial Judgment on the Pleadings at Docket 58 is therefore **DENIED** as moot.

**IV. CONCLUSION**

For the aforesaid reasons,

Polar Star's Motion in Limine to Establish January 6, 2007 as Expiration Date of Ground Lease at **Docket 43** is **DENIED**.

The Government's Cross-Motion to Establish January 6, 2008 as Expiration Date of the Land Lease at **Docket 47** is **GRANTED**.

The Government's Motion Opposing Appointment of a Land Commission for the Determination of Just Compensation at **Docket 49** is **GRANTED**.

The Government's Motion for Preliminary Determination to Establish the Validity of the Housing Lease's Renewal at **Docket 55** is **GRANTED**.

Polar Star's Motion in Limine to Bar Evidence of Project Lease Extension at **Docket 57** is **DENIED**.

Polar Star's Motion for Partial Judgment on the Pleadings at **Docket 58** is **DENIED** as moot.

**IT IS SO ORDERED.**

ENTERED this 18th day of December, 2007.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE